UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 24-13182-LTS |
| | ) | |
| CHIEF GOLDEN et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON MOTIONS
TO DISMISS AND SHOW-CAUSE RESPONSE

July 7, 2026

SOROKIN, J.

Steven Smith, an inmate at a Massachusetts correctional facility who is representing himself and proceeding in forma pauperis, filed this action in December 2024.  Doc. No. 1; see Doc. No. 31.[1]  The claims he asserts arise from events surrounding his prosecution and eventual conviction in state court for criminal charges.  Before the Court now are motions to dismiss filed by three defendants, Doc. Nos. 63, 68, and Smith's show-cause responses concerning the fourth defendant, Doc. Nos. 100, 101, 102.

As explained below, preclusion principles prevent Smith from reviving his claims against the three defendants he has served.  The motions to dismiss will, therefore, be allowed.  Though Smith has explained his failure to serve the remaining defendant, the Court's review reveals his claims against that defendant are barred by the same preclusion principles that doom his claims against the other defendants.

---

[1] Citations to "Doc. No. ___ at ___" reference the document and page numbering that appears in headers appended to each document by the Court's electronic filing system.

I.    BACKGROUND[2]

In July 2018, Meredith Lobur, then a detective with the Provincetown Police Department, arrested Smith after a fifteen-year-old boy ("the victim") accused him of sexual assault.  Doc. No. 1 at 2–3.  Smith had driven the victim from New York to Provincetown sometime before the arrest, having hired the victim with his parents' consent to care for Smith's dog while Smith engaged in business on the trip.  Id. at 3, 8.  Subsequent events led Smith to suspect that the victim had made the trip for his own reasons, hoping to meet up on Cape Cod with a friend.  See id. at 8–9 (alleging victim feigned illness and left Smith at an event to join his friend elsewhere).

From the start, Smith denied the alleged assault, claiming the victim lied after being fired by Smith due to various forms of misconduct, which the victim feared Smith would report to his parents at the conclusion of the trip.  See id. at 3 (accusing victim of "hurting and abusing [Smith's] dog," "smoking [Smith's] cigarettes and bringing a gun into [Smith's] vehicle," "not to mention numerous other bad acts and his overall attitude").  Lobur took a statement from the victim, but she "refused to interview" Smith and "intentionally avoided investigating exculpatory admissions made by" the victim.  Id. at 3–4.[3]  She also refused to review text messages Smith offered to show her which he claimed would exonerate him.  Id. at 6.

Following his arrest and "based solely on the words of a 15 year old boy," Smith was held in custody, with his release conditioned on payment of bail in an amount he could not afford.  Id. at 6.  He also lost his dog.  Id. at 12.  Lobur's supervisor at the time was James

---

[2] The facts are drawn primarily from the operative pleading (Smith's Third Amended Complaint, Doc. No. 25), which the Court construes liberally given Smith's self-representation, and state-court dockets and published decisions in related lawsuits involving the parties.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (permitting consideration of "matters of public record" such as "prior state court adjudications" when resolving Rule 12(b)(6) motion).  The defendants contest many of these facts.
[3] In many places, Smith's submissions include underlining, which the Court omits.

Golden, then the Provincetown Police Department's Chief.  Id. at 1.  Despite recent high-profile issues involving Lobur, Golden engaged in "zero supervision" of her.  Id. at 5.  In Smith's case, Lobur neglected to retain the victim's cell phone when he reported the assault; she obtained it a month later but failed to timely disclose its contents to Smith's counsel, and then eventually produced an inaccessible, encrypted version of the data.  Id. at 7, 10–11, 18.  When Smith eventually received the phone records years later, he discovered "a literal trove of exculpatory evidence," including proof that the victim had deleted pertinent text messages.  Id. at 11, 19.  Smith also claims Lobur committed perjury during her January 2019 grand jury testimony in his case.  Id. at 16–17.

Meanwhile, Smith cycled through a string of court-appointed defense attorneys.  See id. at 11, 13; see also Doc. No. 69-2 at 10, 12–13, 18–19, 21, 23–24, 27 (reflecting appointment of at least ten different attorneys as either lead or, later, standby counsel).  The second of these was Matthew Bober, whom Smith accuses of having "assisted the Commonwealth to keep [Smith] from the alleged victim's phone records" and information about his dog's condition and whereabouts.  Doc. No. 1 at 13.  For more than six months in 2019, Bober ignored Smith's "numerous calls" and letters.  Id. at 13–14; but see id. at 16 (describing statements Bober made to Smith "on visits"); cf. Doc. No. 69-2 at 12–13 (reflecting Bober was appointed in March 2019 and replaced by another lawyer in October 2019).  Though Bober filed discovery motions seeking information of interest to Smith, he neglected to include necessary supporting documents.  Doc. No. 1 at 14–15.  Ultimately, Smith "fired" Bober.  Id. at 15.

Dissatisfied with Bober's successor, Smith was again appointed new counsel in January 2020: Ryan Matthews, whom the state-court judge warned would be Smith's "last attorney."  Id. at 18, 20; see Doc. No. 69-2 at 13.  Matthews filed discovery motions in May and July 2020, but

3

he requested a competency evaluation of Smith and refused to seek dismissal or hire a private investigator. Doc. No. 1 at 20–23. When Smith was deemed competent, Matthews challenged that conclusion in a competency hearing. Id. at 24. Eventually, in August 2021, Smith fired Matthews. See Doc. No. 69-2 at 18.

Smith pled guilty in August 2024 to indecent assault on terms that he believed would permit him to maintain his innocence. Doc. No. 1 at 27; see Doc. No. 69-2 at 4. Because he had written letters threatening to sue the victim's mother, Smith also pleaded guilty to witness intimidation. Doc. No. 1 at 27; see Doc. No. 69-2 at 4–5.[4]

As he acknowledges in his complaint, Smith has "filed numerous civil lawsuits" based on the foregoing events. Doc. No. 1 at 29. In fact, he has sued Lobur and Bober at least twice and Matthews three times via complaints filed in the Superior Courts of two different counties.[5]

Smith first sued Matthews in Plymouth Superior Court in 2021, months after Matthews's representation of Smith concluded, accusing Matthews of malpractice and collusion with police and prosecutors. By September 2022, Smith's claims against Matthews had been dismissed on their merits pursuant to the Massachusetts equivalent of Rule 12(b)(6), after a hearing at which Smith appeared and presented argument. Smith v. Matthews, No. 2183CV00985 (Mass. Super. Ct. Plymouth Cnty., Aug. 31, 2022).

---

[4] Though Smith has since sought to withdraw his guilty plea, his efforts in that regard have not yet succeeded. See Smith v. Commonwealth, 278 N.E.3d 94 (Mass. 2026) (Mem.); Judgment, Commonwealth v. Smith, No. SJ-2026-0247 (Mass. June 11, 2026), Dkt. 10 (noting hearing on Smith's motion for new trial is scheduled for mid-July).

[5] Smith has also sued these defendants in other federal actions. See, e.g., Smith v. Lobur, No. 21-cv-10290-ADB (D. Mass. Mar. 18, 2021), ECF No. 12 (dismissing claims against Lobur and Golden); Smith v. Daou, No. 21-cv-12056-DJC (D. Mass. Sep. 1, 2022), ECF No. 52 (dismissing claims against Lobur and Matthews without prejudice); Smith v. Lobur, No. 24-cv-13000-IT (D. Mass. Mar. 19, 2025), ECF No. 8 (dismissing claims against Lobur, Bober, and Matthews without prejudice).

In February 2022, Smith sued Bober in Plymouth Superior Court, bringing claims arising from Bober's representation of Smith in the criminal case at issue here—including malpractice and a claim pursuant to 42 U.S.C. § 1983.  After substantial briefing by both parties and a motion hearing, Smith's claims were dismissed on their merits.  Smith v. Bober, No. 2283CV00110 (Mass. Super. Ct. Plymouth Cnty., Sep. 8, 2023); accord Doc. No. 69-4 (discussing same events summarized above and finding Smith failed to show Bober proximately caused him any injury, violated his civil rights, or was a state actor for purposes of § 1983).  Smith's motion to reconsider that ruling was denied.

Next, Smith sued Lobur in Plymouth Superior Court in September 2022, bringing claims arising from the same conduct at issue in this lawsuit.  Some claims were dismissed, and others were transferred to Barnstable County.  Smith v. Lobur, No. 2283CV00680 (Mass. Super. Ct. Plymouth Cnty., Oct. 25, 2023); accord Doc. No. 64-1 at 69–75 (discussing same events summarized above, rejecting challenge to timeliness of claims, dismissing official-capacity claims, and transferring remaining claims to proper venue).  Following transfer, Smith's remaining claims against Lober were dismissed in February 2024 upon a finding that Smith had failed to state a plausible claim to relief.  Smith v. Lobur, No. 2372CV00424 (Mass. Super. Ct. Barnstble Cnty., Feb. 5, 2024); accord Doc. No. 64-2 at 100–02 (finding "rambling" allegations failed to plausibly state necessary elements of claim under state civil-rights law).

Smith attempted to revive his claims against Matthews in Barnstable Superior Court in 2023.  On a motion filed by Matthews under Massachusetts's Rule 12(b)(6), in which he argued the action rehashed claims the Plymouth Superior Court had already dismissed, the matter was dismissed with prejudice in April 2024.  Smith v. Matthews, No. 2372CV00220 (Mass. Super. Ct. Barnstable Cnty., Apr. 18, 2024).

Concurrently with his filing of this federal action, Smith filed a nearly identical complaint in Barnstable Superior Court. See Doc. No. 69-5 at 2 (omitting Golden as defendant but describing suit as "the same as the attached federal complaint" which Smith submitted "as the body of [his simultaneously filed state-court] action"). His claims in that suit, which repeated those he brings here, were dismissed on their merits as to Lobur and Bober in March 2025. Judgments of dismissal with prejudice entered thereafter, along with a judgment dismissing without prejudice Smith's claims against Matthews for failure to serve him. Smith v. Lobur et al., No. 2472CV00510 (Mass. Super. Ct. Barnstable Cnty., May 5, 2025); accord Doc. No. 64-3 at 21; Doc. Nos. 69-6, -7.[6]

Turning to the operative complaint in this action, the Court understands Smith to be asserting claims under 42 U.S.C. § 1983 against Lobur, Golden, Bober, and Matthews for violating Smith's constitutional rights in connection with his arrest and prosecution on charges of sexually assaulting the victim. See generally Doc. No. 1. The claims plainly and entirely arise from the same events that spawned the series of state-court lawsuits listed above. Smith seeks $10 million in compensatory damages, and the same amount in punitive damages. Id. at 31. With the operative complaint, and throughout his motion papers, Smith directs the Court's attention to information provided to him by a private investigation in 2023, before Smith entered his guilty plea. See Doc. No. 25-1; see also, e.g., Doc. No. 94-3. This information, of course, was available to Smith when he litigated the claims he filed in state court at the same time he instituted this action.

---

[6] It appears Smith has recently sued Lobur again, along with other defendants previously dismissed from this action. Smith v. Gildea et al., No. 2672CV00203 (Mass. Super. Ct. Barnstable Cnty., filed June 8, 2026).

Lobur and Golden have jointly moved to dismiss the claims against them.  Doc. No. 63. They argue Smith's claims are time-barred, precluded by the previous state-court judgments, and implausible.  Doc. No. 64.  Separately, Bober echoes his co-defendants' arguments.  Doc. Nos. 68, 69.  Smith has opposed both motions, Doc. Nos. 75, 80, and made additional submissions contesting the positions taken by the three moving defendants, Doc. Nos. 73, 82, 94.

As to Matthews, the Court issued an Order on June 3, 2026, explaining that the docket contained no proof of service and requiring Smith to show cause why his claims against Matthews should not be dismissed.  Doc. No. 90.  Smith submitted three documents entitled "motions," which the Court construes as his show-cause response.  Doc. Nos. 100, 101, 102.

II.    DISCUSSION

A.    Motions to Dismiss

Smith's claims against the moving defendants (Lobur, Golden, and Bober) cannot proceed.  Settled law precludes him from reasserting claims and issues that were—or could have been—resolved on their merits in his previous state-court lawsuits.

Generally speaking, parties are barred "from relitigating claims that could have been made in an earlier suit," as well as "claims that were actually made."  Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010).  This doctrine, known as claim preclusion or res judicata, protects litigants against gamesmanship, preventing a plaintiff from seeking "a second chance at a different outcome by bringing [the same or] related claims against [the same or] closely related defendants at a later date," while also conserving "scarce judicial resources."  Id. If "the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, . . . all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment."  In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007).

7

"A judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." Id. Thus, Massachusetts law governs whether a Massachusetts state-court judgment precludes a claim brought in federal court. In Massachusetts, claim preclusion turns on "three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005) (citation modified).

Like other affirmative defenses, claim preclusion "may be adjudicated on a motion to dismiss for failure to state a claim" assuming two conditions are satisfied. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003). First, "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." Id. Second, "the facts so gleaned must conclusively establish the affirmative defense." Id.

The moving defendants invoke these principles here, relying on the operative pleading and state-court judgments involving the same parties. See Giragosian v. Ryan, 547 F.3d 59, 65–66 (1st Cir. 2008) (allowing consideration of such state-court documents as "matters of public record," use of which is neither a "surprise" nor "otherwise unfair" (citation modified)). Though Smith has made several submissions opposing the defendants' motions and the Court has reviewed all of them, none engage with the preclusive effect of the judgments rendered in his prior state-court lawsuits against the moving defendants.[7]

---

[7] In his main opposition memoranda, Smith advances arguments about why his prior federal lawsuits (and especially his 2021 action against Lobur and Golden, which Judge Burroughs dismissed pursuant to abstention principles that applied while his state criminal prosecution

8

Application of the claim-preclusion elements is straightforward here.  The Court will address each moving defendant in turn.

As noted, Smith sued Bober in state court twice.  Doc. No. 69-4, -6, -7.  In both cases, as in this one, Smith was the plaintiff and Bober a defendant.  Both cases featured the same claims against Bober, arising from the same events, as Smith seeks to pursue here.  Compare Doc. No. 69-3, -5, with Doc. No. 25.  And both prior state-court actions yielded final judgments on the merits—in both cases, dismissals for failure to state a claim.  See Buffalo-Water 1, LLC v. Fidelity Real Estate Co., 111 N.E.3d 266, 273 n.9 (Mass. 2018) ("At least for res judicata purposes, . . . a dismissal under Mass. R. Civ. P. 12(b)(6) is considered an adjudication on the merits.").  Thus, all three elements of claim preclusion are satisfied as to Bober.[8]

Smith has also filed two state-court lawsuits against Lobur.  Doc. No. 64-1, -3.  Both cases included the same parties, claims, and factual allegations as this one.  Compare Doc. Nos. 69-1, -3, with Doc. No. 25.  And both concluded with state-court decisions dismissing Smith's claims against Lobur on their merits.  Doc. No. 64-1 at 69–75; Doc. No. 64-2 at 100–02; Doc.

---

remained ongoing) should not prevent this one from proceeding.  See generally Doc. Nos. 75, 80.  He also defends the timing of this lawsuit and the merits of his claims.  See generally Doc. Nos. 73, 75, 80, 82, 94, 94-1.  In his submissions, Smith uses vivid, passionate language that sometimes verges on threatening.  E.g., Doc. No. 80 at 20 ("Bober needs to settle up and pay me 5,000 if he knows what is good for him . . . because he will surely end up in hell for selling me out."); Doc. No. 82 at 5–6 (referring to Lobur as an "evil bitch" who "needs to pay up" and specifying he "need[s] to be paid at least 50,000"); Doc. No. 82-1 at 6 ("But the world will care if I don't get justice through legal means, soon.").  He does not, however, address the state-court judgments dismissing his claims against the same defendants on their merits, let alone advance any theory that would justify a finding that those judgments have no preclusive effect.

[8] Were they not precluded, Smith's claims against Bober would very likely fail for other reasons identified in Bober's motion papers, though the Court need not fully evaluate those alternative grounds for dismissal.  See Doc. No. 69 at 10–14 (challenging sufficiency and timeliness of claims).  To the extent Bober seeks an order requiring Smith to pay his fees and costs in this action, id. at 15, that request is DENIED.  Should Smith sue Bober again for the same claims two different state courts have dismissed and this Court has now found precluded, a similar request for fees might warrant more serious consideration.

No. 64-3 at 21.  As with Bober, the record compels a finding that each element of claim preclusion is satisfied with respect to Smith's claims against Lobur.

Though Smith has not sued Golden in state court, that fact alone does not prevent a finding that his claims against Golden are precluded.  "A non-party to" an earlier lawsuit "may use a judgment in that action defensively against a party who was a plaintiff in [that] action on the issues which the judgment decided so long as the parties have a sufficiently close relationship."  Hudson v. MacEachern, 94 F. Supp. 3d 59, 66 (D. Mass. 2015) (citation modified).  The "identity of parties" element is satisfied in such a case if the "defendants named in the two suits" were "involved in the same nucleus of operative facts."  Id.  Here, Smith's claims against Golden arise directly and exclusively from his alleged failure to supervise Lobur, his subordinate officer, and therefore depend entirely on "the same nucleus of operative facts."  This suffices for the first element of claim preclusion.  The second element is also satisfied, because Smith could have pursued a failure-to-supervise claim against Golden in one or both prior state-court actions.  See Kucharski v. Tribeca Lending Corp., 620 F. Supp. 2d 147, 150 (D. Mass. 2009) (explaining claim preclusion extends to claims that could have been but were "not actually raised . . . if they arise from the same common nucleus of facts as the claims that were litigated").  And, as noted above concerning Lobur, the prior lawsuits ended in final judgments on the merits, establishing the third and final element of claim preclusion.

In sum, the decisions of two state courts rejecting Smith's claims against Bober and Lobur on their merits preclude Smith from reviving the same (or related) claims here against those defendants and Golden.  His claims against the moving defendants are DISMISSED.

B.    Show-Cause Response

All that remains, then, is the status of Smith's claims against Matthews.  The Court explained in a prior Order that Smith's effort to serve Matthews with the assistance of the United

10

States Marshals Service ("USMS") was unsuccessful.  See Doc. No. 90 at 2–3.  Smith's responses addressing this failure center on two main points.  See Doc. Nos. 100, 101, 102.[9] First, Smith stresses that his indigency and incarceration pose challenges when it comes to serving without assistance from the USMS.  Second, Smith expresses confusion regarding the status of service on Matthews, citing a notation on the Court's docket.

These points are reasonable, as far as they go.  It is because of the first point that a litigant in Smith's position may enlist the aid of the USMS, as Smith has done here.  The USMS, however, discharges its role in this process by attempting service at the location specified by the litigant.  Here, the USMS did so.  The service packet Smith provided to the USMS identified the following address for Matthews: "One Park Place, 115 Sandwich Road, Plymouth, MA 02360." Doc. No. 59 (emphasis added).  On the return form docketed in this action after the USMS attempted service at that address, the Deputy United States Marshal who completed the bottom portion of the form marked a box certifying that they were "unable to locate the individual . . . named above," and added the following handwritten remark: "115 Sandwich Road, Plymouth Ma is a wooded vacant lot.  Unable to serve."  Id.

A copy of the completed form was mailed to Smith at the Court's direction in late February 2026.  See Doc. Nos. 70, 71.  Nevertheless, Smith apparently continued to believe that Matthews had been served, based on a note added to the Court's electronic docket when the completed form was submitted.  Though the form itself shows that service did not occur, text accompanying the docket entry implies otherwise: "US Marshal Process Receipt and Return for

---

[9] To the extent these submissions are titled and docketed as "motions," they are mislabeled.  The Court construes them, together, as Smith's show-cause responses (which necessarily urge the Court not to dismiss the claims against Matthews on service grounds).  The Clerk shall correct the docket to mark these as show-cause responses and shall TERMINATE them as motions.

Summons.  Ryan T Matthews, Esq served Delivered on 2/4/2026."  The Court accepts Smith's representations that, based on the docket text, he misunderstood that Matthews had been served. See, e.g., Doc. No. 100.  However, as the party with the obligation to ensure service consistent with all governing procedural rules—and where the Clerk mailed to Smith a physical copy of the relevant form that clearly stated service had not occurred—the Court is not inclined to conclude that Smith's reliance on ambiguous docket text provides good cause for his failure to serve Matthews.

Furthermore, a search of the Massachusetts Board of Bar Overseers ("BBO") website reveals that the service issue arose from a mistake Smith made in completing the address portion of the form for Matthews.  The office address Matthews has on record with the BBO is 115 Sandwich Street.  Plymouth, it seems, is home to both Sandwich Road (where 115 marks a vacant lot) and Sandwich Street (where Matthews's office is located).  Smith's mistake is perhaps understandable, but it is not the fault of the USMS—nor is the USMS obligated to search for a defendant at any location other than the one identified by the plaintiff.

Having considered all of these circumstances, the Court might not dismiss Smith's claims against Matthews without permitting one further attempt to serve him—at the corrected address—with the operative complaint and summons.  However, in analyzing and resolving the pending motions to dismiss, the Court discerned that the same preclusion principles that applied to Smith's claims against the other three defendants inevitably bar his claims against Matthews.

Smith has sued Matthews three times in state court for claims arising from his representation of Smith in the criminal action that is the subject of this lawsuit.  Two of those actions against Matthews ended in dismissals of Smith's claims on their merits, with prejudice. See Smith v. Matthews, No. 2183CV00985 (Mass. Super. Ct. Plymouth Cnty., Aug. 31, 2022);

12

Smith v. Matthews, No. 2372CV00220 (Mass. Super. Ct. Barnstable Cnty., Apr. 18, 2024).  A review of the state-court dockets in those two matters confirms that the three elements of claim-preclusion applied under Massachusetts law are satisfied here and prevent Smith from suing Matthews again for the same or related claims.  There is identity of parties (Smith as plaintiff, and Matthews as defendant) and causes of action (malpractice and allegations of collusion with police and prosecutors to Smith's detriment), and both state-court actions terminated in final judgments on the merits (dismissals with prejudice for failure to plausibly state a claim).

In these circumstances, coupled with Smith's failure to serve Matthews (repeating a deficiency that led to the termination of his third state-court suit against Matthews), the Court concludes that dismissal of Smith's claims against Matthews is warranted.  Permitting another attempt to serve him would be an exercise in futility.

III.    CONCLUSION & ORDERS

For the foregoing reasons, the motions to dismiss (Doc. Nos. 63 and 68) are ALLOWED. Smith's claims against defendants Golden, Lobur, and Bober are DISMISSED with prejudice. The Court's June 3 Order to Show Cause (Doc. No. 90) is DISCHARGED, but Smith's claims against Matthews are also DISMISSED with prejudice.  The Clerk shall enter a judgment of dismissal, with all parties to bear their own fees and costs.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge

13